CRON & DEHN HARDWARE CORP. ET AL. *v.* UNITED STATES (No. 3342)[1]

United States Court of Customs and Patent Appeals, March 2, 1931

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument February 5, 1931, by Mr. Baldwin and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of galvanized wire netting composed of steel wire, with meshes approximately one inch in size, and used as reinforcement in "cement walls and other structures," was assessed for duty by the collector at the port of San Francisco as articles or wares composed of metal, not specially provided for, at 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, * * * whether partly or wholly manufactured, 40 per centum ad valorem.

The importers protested, claiming it to be dutiable as woven-wire fabric, at only 25 per centum ad valorem under paragraph 318 of that act, which reads as follows:

PAR. 318. Woven-wire cloth: Gauze, fabric, or screen, made of wire composed of steel, brass, copper, bronze, or any other metal or alloy, not specially provided for, with meshes not finer than thirty wires to the lineal inch in warp or filling, 25 per centum ad valorem; with meshes finer than thirty and not finer than ninety wires to the lineal inch in warp or filling, 35 per centum ad valorem; with meshes finer than ninety wires to the lineal inch in warp or filling, 45 per centum ad valorem.

William Moylan Duval, the only witness called by the importers on the trial below, testified that he was an "importing and selling agent" for one of the importers; that the smallest mesh in wire

netting of the character of that involved was about three-fourths of an inch in size; that the involved merchandise was used as reinforcement in "cement walls and other structures"; that it was galvanized after having been woven; that a woven article was something that had been woven; and that he thought the imported merchandise had been woven because he always bought it as such. He also testified that the merchandise was a wire fabric, and that a wire fabric was something fabricated or made of wire. He was unable, however, to define the terms "weave" and "woven."

The Government called five witnesses, apparently for the purpose of proving that the imported merchandise was excluded, by commercial designation, from the terms "woven-wire cloth" and "woven-wire fabric." Although there is testimony to the effect that it is not "wire cloth," "wire gauze," "wire screen," or "wire fabric," and that it is known as "wire netting, poultry netting, stucco netting," the Government failed to establish commercial designation.

It appears from the evidence that all the wires run lengthwise of the fabric and are twisted together to form meshes; that there are no filling or weft wires; and that the involved merchandise and woven-wire cloth are made by entirely different processes.

The court below reviewed the evidence and the legislative history of paragraph 318, and, as we understand its decision, held that the paragraph is limited to woven-wire cloth, such as gauze, fabric, or screen; that the involved merchandise is of the character of poultry netting; and that it is not woven-wire cloth, and, accordingly, overruled the protest.

It is claimed by counsel for importers that paragraph 318 is not limited to woven-wire cloth, and that the involved merchandise is woven-wire fabric and is dutiable as such under paragraph 318.

In the Summary of Tariff Information, 1921, prepared for the use of the Committee on Finance of the Senate relative to H. R. 7456, the Tariff Commission made the following report with reference to paragraph 318:

WOVEN-WIRE CLOTH

[See Survey C-8]

*Description and uses.*—Woven-wire cloth consists of gauze fabrics, screens, etc., composed of wire with fine meshes and is used largely for straining and for protection against insects and the like. "Fourdrinier wires," or wire cloth used in paper making, are one of the most important items.

*Production.*—In the figures of the Federal Census the country's output of woven-wire cloth is included with that of other woven-wire products. Excluding woven-wire fencing and poultry nettings, the output of woven-wire products in the United States in 1919 amounted to 26,610 short tons, valued at $4,274,200. In 1914 the country's output was 22,720 tons, valued at $2,822,700.

*Imports and exports.*—The imports and exports of woven-wire cloth are not separately tabulated by the Bureau of Foreign and Domestic Commerce.

*Important changes in classification.*—Woven-wire cloth was not separately specified in the act of 1913, but was classified among "articles manufactured wholly or in chief value of any wire or wires provided for" in this section under paragraph 114, or as "articles or wares not specially provided for * * * if composed wholly or in chief value of * * * metal" under paragraph 167.

Paragraph 318, *supra*, is identically, with the exception of the rates of duty, as it appeared in H. R. 7456. It would seem to be clear, therefore, that, although the paragraph is somewhat inartificially drawn, the Congress intended to limit its provisions to woven-wire cloth—a material "with fine meshes"—composed of wire, such as gauze, fabric, or screen; and that it was not intended to be sufficiently comprehensive to include woven-wire products with large meshes, such as poultry netting, fencing, and other similar wire products.

"Wire cloth" is defined as follows:

A texture of wire intermediate between wire gauze and wire netting, used for meat-safes, strainers, etc. [Century Dictionary and Cyclopedia.]

Wire. * * * w. cloth, a fabric of woven wire, as for strainers, window-screens, etc. * * * w. gauze, a material of a gauzelike structure made of strands of interwoven wire. [Funk & Wagnalls New Standard Dictionary.]

Wire cloth. A fabric of woven metallic wire, used for strainers, in paper manufacture, etc.

Wire gauze. A gauzelike texture of fine wires. [Webster's New International Dictionary.]

The involved merchandise consists of warp wires twisted together. There are no weft or filling wires. The meshes are not fine, but, on the contrary, are approximately one inch in size.

As commonly understood, the terms "weave" and "weaving" contemplate both warp and weft threads. They are defined as follows:

weave, * * * 1. To entwine or lace together (threads or strips of pliable material) into a texture, especially by interlacing woof-threads among warp-threads, as in a loom; also, to insert by intertwining; as, to *weave* fibers, yarns, etc. [Funk & Wagnalls New Standard Dictionary.]

weaving. The process of weaving consists in interlacing, at right angles, two or more series of flexible materials, of which the longitudinal are called warp and the transverse weft. * * * [Encyclopedia Britannica.]

It will be observed that paragraph 318 provides for varying rates of duty depending on the fineness of the meshes, the size to be determined by the number of "wires to the lineal inch in *warp* or *filling*." (Italics ours.) It would seem to be clear that the Congress intended to limit the provisions of paragraph 318 to woven-wire cloth, whether gauze, fabric, or screen, having both warp and filling or weft wires.

The involved merchandise is not woven, nor is it wire cloth, and, therefore, is not dutiable under paragraph 318.

The judgment is *affirmed.*